(No. 80-CC-1735—

KANKAKEE COMMUNITY ACTION PROGRAM, INC., Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed October 1, 1980.*

JOSEPH R. YURGINE, for Claimant.

ROE, C. J.

This cause coming on to be heard on the motion of Respondent to dismiss, the motion of Claimant to strike and for summary judgment, the response thereto by Respondent and Respondent's motion for summary judgment, due notice having been given, and the Court being fully advised in the premises;

In its motion to dismiss, Respondent states that the departmental report, which is prima facie evidence of the facts set forth therein, shows that the department did not contract for the services and that no services were performed. In support of this allegation copies of correspondence between the parties and contracts were attached.

Claimant responded to said motion by stating that the department report in fact contained a copy of a memorandum upon which Claimant relied by signing the renewal agreement and therefore the contract was extended.

From the documents before us we have tried to reconstruct the facts and sequence of events. Apparently the parties had a contract covering the period of fiscal year 1979 whereby the State agreed to pay Claimant $125.00 per month and Claimant agreed to make available to the State secretarial, telephone, copying, and filing services. These services were to be utilized, as would be necessary, by the VDIS project director to Claimant which stated in pertinent part:

"There exists the possibility, particularly where certain contractors are still negotiating for FY '80 rates with the Department of Children and Family Services, that the Department of Corrections/Unified Delinquency Intervention Services FY '80 contracts will not be fully executed (completely signed) by July 1, 1979.

Because of this, and to avoid a possible break in payment over this Fiscal Year transition, VDIS is asking contractors to sign the enclosed renewal

which will extend the FY '79 contract at the existing rate, until the FY '80 contract is fully executed.

It is imperative that the enclosed renewal be signed and dated ° ° °, and returned to VDIS no later than May 25, 1979."

We find that the above language constitutes an offer to extend the FY '79 contract. That offer was to remain open through May 25, 1979. It was upon this offer that Claimant alleges reliance. However, in order to accept the offer Claimant had to do so in the manner stated therein. As is clear from both the renewal and copy of the new contract, Claimant did not accept it until June 6, 1979. From the language in the offer stating the time of acceptance to be "imperative" we find the time of acceptance to have been of the essence. There having been no valid acceptance, no contract was created. Furthermore, Claimant should not have relied on the memorandum due to the fact that he did not make a timely acceptance of the offer.

Claimant also alleges that the FY '79 contract provides for cancellation thereof by either party provided that 30 days written notice is given and that notice of cancellation was not given in accordance with the terms of the contract. We find that notice of cancellation was unnecessary, in view of the fact that there was no contract for FY '80 and that, by its own terms, the FY '79 contract expired at the end of that fiscal year, as Respondent correctly points out in its response to Claimant's motion to strike.

It is hereby ordered that this claim be, and hereby is, denied.